**WIEL AND AMUNDSEN, A/S, as Claimant of THE S. S. ROMULUS, Appellant,**

v.

**Roy E. POTTER, Appellee.**

**No. 14527.**

United States Court of Appeals
Ninth Circuit.

Dec. 19, 1955.

**342**

Wood, Matthiessen, Wood & Tatum, Lofton L. Tatum, John R. Brooke, Portland, Or., for appellant.

Nels Peterson, Frank H. Pozzi, Berkeley Lent, Portland, Or., for appellee.

Before DENMAN, Chief Judge, POPE, Circuit Judge, and BYRNE, District Judge.

DENMAN, Chief Judge.

Wiel and Amundsen, A/S, as claimant of the steamer Romulus, hereafter Shipowner, appeals from a decree of the district court awarding damages to Potter, a longshoreman, who was loading lumber in the forehold of the ship. The district court held that the Shipowner was negligent in failing to make tight a removable rod, a part of a fencing railing above the deck just forward of the opened forehold also making the vessel unseaworthy in that respect, as a result of which the loose rod gave away in Potter's hands as he moved to his right from the lumber on the left side of the ship, causing him to fall some seven and one-half feet onto the deck beneath with his ensuing injury.

The Shipowner's contention is that the injury to Potter was caused solely by his own negligence in proceeding on the narrow part of the foredeck protruding over the hold and relying on the loose rod to sustain him instead of moving over the lumber itself or climbing over the fencing and proceeding over the foredeck.

The Shipowner claims that we are free to consider the evidence de novo in this admiralty appeal, though an inspection of the testimony, all heard by the court, shows that it is conflicting in essential respects. It is unquestioned that the removable rod could not be made fast to the rail of which it was a part. It had lacked so long a cotter pin to be inserted in a slot in the rod to make it fast to the railing, that seven coats of paint on the slot made its use impossible. Since we hold that Potter properly relied on the safety of that rod, this clearly sustained the findings of the court:

"VI.

"That at the time and place of said accident respondent, Wiel and Amundsen, A/S, was negligent and the vessel was unseaworthy because the top rail was loose and was not fixed permanently or secured.

"VII.

"That at the time and place of said accident said vessel was unseaworthy and said respondent, Wiel and Amundsen, A/S, was negligent in failing to have a cotter-key or shaker or other device through said eye of the hook."

"The main question is, was it negligent of Potter to move along the deck edge over the open hold, on which the district court made the following finding:

"XI.

"I find that libelant did not choose an unsafe way in which to perform his work and that libelant himself was not negligent."

The testimony of Marvin Girt, the boss stevedore, clearly warranted the court in making this finding.

"Redirect Examination

"By Mr. Brooke:

"Q. I think this is irrelevant, perhaps, but for the record, could you tell the Court from your experience what would be the purpose of this guard railing? A. It was for the purpose of protecting the men from falling off the forecastle when they were working there—I should say, sailors working there at sea; also when a man was walking along the forecastle, a longshoreman or sailor, to keep him from falling off the forecastle onto the main deck, in case they would fall sideways.

"Q. I think I am right when I say you testified the railing would serve that purpose? A. Yes.

"Mr. Brooke: No other questions.

"Recross-Examination

"By Mr. Pozzi:

"Q. You worked a good many years as a longshoreman. You have walked rails, haven't you, walked the edges? A. Yes.

"Q. You have to do it a lot of times in your work? A. Yes.

"Q. And you always expect them to be secure, don't you? A. Yes.

"Mr. Pozzi: That is all.

"(Testimony of Marvin Girt)

"Redirect Examination

"By Mr. Brooke:

"Q. When you say you walk the edges, what do you mean by that? A. Out on the edge lots of times. A longshoreman, lots of times, if a chain or something is fouled, he will walk along the edge of the ship, along the railing.

"Q. Trusting the rail will hold him from falling over? A. Yes.

"Q. This rail would serve that purpose, would it not? A. Yes.

"Mr. Brooke: That is all."

The only testimony claimed to be to the contrary on the question of walking on the afterside of the railing is that of Harold, the ship's supercargo, who testified not as to his general experience but that "on this ship" as follows:

"Q. During the time you *worked this ship*—as I understand 17 or 18 times—had you ever seen anyone walking along the after edge of this railing as Mr. Potter did when he was injured?

"Mr. Pozzi: Objection, your Honor.

"The Court: Overruled.

"Q. (By Mr. Brooke): Had you ever seen anyone do that before? A. Not to my recollection, no." (Emphasis added.)

Even were this a trial de novo we would accept the testimony of Girt as to his general experience against that of Harold.

Since the evidence supports the finding that Potter was not negligent in proceeding on the afterside of the rail relying on the safe condition of the rod and the finding that the rail was unsafe, we agree with the district court that the shipowner was negligent and its ship unseaworthy, and affirm the decree.